# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| Otis Mays, | No. 21-cv-2075 (WMW/DTS) |
| Plaintiff, |  |
| v. | **REPORT AND RECOMMENDATION** |
| City of Bloomington, et al., |  |
| Defendants. |  |

## INTRODUCTION

*Pro se* Plaintiff Otis Mays brings this civil rights action, alleging Defendants violated his constitutional rights during his arrest by the Bloomington Police Department and confinement by the Hennepin County Adult Detention Center. Dkt. No. 83. Defendants City of Bloomington, the Bloomington Police Department, Chief of Bloomington Police Department John Doe #1, Megan Thul, Joseph Kauser, Kelsey Degoey, Catherine Vaughn, Michael Larson, Andy Plant, Matthew Nybeck, Scott Mehr, Justin Vanhall, Alex Blaine, Michael Rocklin, George Harms, Dennis Koosmann, Heather Potter, and Carolyn Kne (collectively "Bloomington Defendants") and Defendants Hennepin County, Hennepin County Sheriff's Office, Hennepin County Adult Detention Center, the City of Minneapolis, David Hutchinson, John Does #2-6, Jane Doe #1-2, and unnamed Hennepin County employees (collectively "Hennepin Defendants") move to dismiss Mays's Fourth Amended Complaint. Dkt Nos. 84, 90. For the reasons discussed below, the Court recommends that the Bloomington Defendants' motion be granted in part and denied in part, and that the Hennepin Defendants' motion be granted.

**FINDINGS OF FACT**

I.    **Procedural Background**

In September 2021, Mays filed this action. Dkt. No. 1. Mays has amended his complaint three times. Dkt. Nos. 29, 44, 83. The operative pleading this Court now considers is Mays's Fourth Amended Complaint (hereinafter "Complaint").[1] Compl., Dkt. Nos. 82, 83. The Defendants moved to dismiss Mays's Complaint. Dkt. Nos. 84, 90. Notwithstanding any untimeliness, the Court has also considered the arguments raised in Mays's Response Memorandum given Mays's *pro se* status and in the interests of completeness. Dkt. No. 101.

II.    **Background**

Mays contends his civil rights were violated in connection with his 2017 arrest and detention based on the following allegations. Compl. 1, 6. On September 25, 2017, Bloomington Police Department (BPD) officers arrested Mays at gunpoint in Bloomington, Minnesota. *Id.* at 6. During the arrest and after he told the officers he could not lift his right arm completely, Defendant Koosman grabbed Mays by his arms and handcuffed him. Mays was passed to Defendant Nybeck, who forcefully shoved Mays into the side of a vehicle, kicked Mays's legs apart to search him, and removed items from Mays's pockets. Nybeck pushed Mays against a squad car again, yanked Mays's arm up, and pushed Mays harder against the squad car. He then applied more pressure to Mays's arm. Mays told Nybeck that he was hurting Mays and that Mays needed medical attention. Nybeck then forcefully pushed Mays into the squad car. Defendants Degoey, Kauser, Thul,

---

[1] Although not technically Mays's fourth Amended Complaint, for consistency and ease of reference, the Court adopts Mays's document title.

Larson, Vaughn, Vanhall, and Blaine began searching inside Mays's car. *Id.* Mays asked Koosmann if there was a search warrant for the car and told Koosmann he wanted to call his lawyer. *Id.* at 6-7. Koosmann then told Nybeck to take Mays to the station. *Id.* at 7.

Nybeck transported Mays to the BPD station. *Id.* During the transport, Mays told Nybeck the handcuffs were so tight he could not feel his arm. Nybeck told Mays the handcuffs would be adjusted when they arrived at the police station unless it was an emergency. Mays told Nybeck it was an emergency because he could not feel or move his arm. Nybeck did not respond. When they arrived, Nybeck began removing Mays from the vehicle and grabbed Mays's right arm. Mays told Nybeck his arm hurt and that he needed medical attention because he believed his shoulder was dislocated. Nybeck responded, "Oh so you're trying to say that I broke your shoulder?" and proceeded to search Mays. Nybeck "roughly went over" Mays's right shoulder and drove Mays's right arm into the car. Mays again complained of the pain to his arm and shoulder. *Id.*

Mays was brought to the booking area and uncuffed. *Id.* He had red marks on his wrists and could not feel or move his right arm. Mays told Defendant Rocklin that he could not move his arm, that he had recently had surgery on the arm, and that he believed the arm was dislocated. Rocklin told Mays it may be from having the handcuffs too tight and that the issue would go away with time. Rocklin asked Mays to remove everything from his pockets, wrote down what had been in his pockets, and asked Mays to sign the form. Mays told Rocklin he could not sign the form because he was right-handed and he needed his seizure medication from his vehicle. *Id.*

Mays was placed in a cell and told Rocklin he still could not feel his arm. *Id.* at 8. Rocklin told Mays to give it more time and an hour later Mays complained to Rocklin

again. Rocklin provided Mays with water and unknown medication, which did not help the pain. Mays fell asleep and was wakened by Defendants Kne and Potter. Kne told Mays he was being held for probable cause in connection with a fraud investigation and his phone was being held as evidence. Mays said he wanted to speak to his attorney and Kne stated she would have his attorney's card brought to him. After Kne left, Mays waited for some time and asked to contact his attorney more than 10 times. An unnamed officer told Mays that Kne stated Mays was not permitted to make any calls. Mays continued to request medical attention. *Id.*

At some point, Defendant Plant brought Mays from the cell to the booking area. *Id.* Defendants Michael and Rocklin were present, and Rocklin gave Plant paperwork and the property Mays had taken from his pockets at arrival. Mays told Plant he needed medical attention and Plant responded that the Hennepin County Adult Detention Center (HCADC) had medical staff who could assist. Plant told Mays to turn around to be handcuffed and Mays asked if he could be handcuffed in the front because of the pain in his right arm. *Id.* at 9. Plant responded he had to handcuff Mays in the back per the policy regarding transports. Plant attempted to handcuff Mays and Mays pulled away because of the pain. Mays asked if Plant could use two sets of handcuffs, but Plant said no and proceeded to handcuff Mays with one set of handcuffs behind his back. *Id.*

Plant brought Mays to the HCADC. While filling out paperwork, Plant asked Mays if he had been injured in the last 24 hours, to which Mays responded that Plant knew Mays was hurt because Mays had told him that he could not feel his right arm and his arm had a burning sensation. Mays also stated he had recently had surgery on the same

shoulder and Mays believed it was dislocated. When Plant finished the paperwork, the two entered the booking area where a few HCADC employees were waiting. *Id.*

An HCADC employee, John Doe #3 asked Mays to place his hands on the wall and Mays responded he could not move his arm and believed it was dislocated because an arresting officer had repeatedly slammed him into a car and twisted his arm. *Id.* John Doe #3 called someone, and John Doe #4 arrived. John Doe #4 called the medical department and asked for someone to examine Mays. Jane Doe #2 arrived and asked Mays what had happened. *Id.* at 9-10. Mays stated an arresting officer messed up his shoulder that had recently undergone surgery. *Id.* at 10. He stated officers pushed Mays very hard and forcefully into the squad car, twisted Mays's arm behind his back to handcuff him, and forcefully pushed Mays into a wall at the police station. Jane Doe #2 examined Mays's shoulder and stated she believed it was separated or dislocated and that Mays needed to be seen because it could get worse. *Id.*

In response, Plant asked Jane Doe #2 if she was a doctor. *Id.* She responded no and told Plant not to question her because "it was one of yours who [injured] his shoulder." She also stated HCADC would not accept Mays unless he was seen by a doctor and cleared. Plant told Mays to put his hands behind his back and Mays stated he could not. Plant reached for Mays and Mays asked John Doe #4 to intervene because of Mays's pain. John Doe #4 asked Plant why he could not handcuff Mays in the front because it was "pretty clear" Mays could not "do anything" with his arm. Plant responded it was against policy and John Doe #4 told Mays he could not do anything because Mays was not in HCADC's custody. Jane Doe #2 stated that continued pushing and pulling of Mays's arm would cause more damage and Plant responded that Jane Doe #2 was not a doctor

5

and that was just her opinion. Mays asked John Doe #4 to take him to the doctor and he responded there was nothing he could do. Plant then grabbed Mays's arm, handcuffed him behind his back, and placed him in the squad car. *Id.*

While driving away from HCADC, Plant talked with someone on the phone and told the person what had occurred. *Id.* Plant told the person he did not want to sit in the emergency room all night. He then called Kne and explained what happened at HCADC and that Jane Doe #2 told Plant that Mays needed to be examined by a doctor before HCADC would admit Mays. *Id.* at 10-11. Plant told Kne he did not want to sit in the emergency room all night. *Id.* at 11.

Mays heard Kne tell Plant that she did not have probable cause to hold Mays, that Mays's attorney would cause problems regarding what had happened, and that Plant should let Mays go. *Id.* Plant then got out of the car and told Mays to get out. Mays stated they were not at the hospital and asked if he could return to the police station to obtain his property. Plant stated Mays would have to sign paperwork first. While Mays read the paperwork, he and Plant exchanged words and Mays made a comment about Plant's wife. Plant became mad. As a group of men walked past, Plant picked up Mays's wallet and stated, "Here Mr. Mays, don't forget that's twelve thousand dollars in cash in there, be careful." Plant then loudly stated that Mays obtained the money by being an informant. Mays walked away from Plant and the group of men followed him, grabbed him, beat him up, and took his wallet while calling him a "rat." Mays walked to his sister's home and she helped him. Mays was examined by a doctor who determined Mays had a separated shoulder and would need surgery or to allow it to heal by itself with time. *Id.*

### III.    Causes of Action

Mays brings 16 claims against Defendants alleging they (1) violated his First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; (2) conspired to violate his civil rights under 42 U.S.C. § 1985; and (3) acted negligently under state law. Compl. 11-15. Mays asserts named Defendants acted in their individual and official capacities and alleges all Defendants acted willfully, wantonly, and intentionally to violate clearly established statutory and Constitutional rights. *Id.* at 2. He seeks compensatory, nominal, and punitive damages; declaratory, injunctive, and equitable relief; and attorney fees. *Id.* at 1, 15. He also seeks relief on behalf of "all others similarly situated who are, have been during the past year, or will be, confined in the jail." *Id.* at 1. Mays asks this Court to appoint counsel for the class and to appoint a Special Master. *Id.* at 6, 12.

### CONCLUSIONS OF LAW

All Defendants have moved to dismiss Mays's Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. To survive a Rule 12(b)(6) motion, the complaint must allege sufficient facts that state a plausible claim to relief. *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Making such a determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level"

7

and "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 795-96 (8th Cir. 2021) (quotation omitted). The "face" of the complaint includes public records and materials embraced by the complaint as well as materials attached to the complaint. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012).

The complaint is to be construed liberally. *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020). Courts "hold a *pro se* complaint, however inartfully pleaded, to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quotation omitted). While a court accords deference to *pro se* pleadings, it will not supply facts not alleged that might support the plaintiff's claim. *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). But courts are "not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (quotations and citations omitted). A plaintiff must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Legal conclusions that are couched as factual allegations may be disregarded by courts. *See Iqbal*, 556 U.S. at 678-79.

## I.    Entities Not Subject to Suit

Defendants contend the claims against the BPD, HCADC, and Hennepin County Sherriff's Office must be dismissed because these Defendants are not proper legal entities subject to suit. Bloomington Mem. 9, Dkt. No. 87; Hennepin Mem. 5, Dkt. No. 93. The "[c]apacity to sue or be sued is determined . . . by the law of the state where the court

8

is located." Fed. R. Civ. P. 17(b). Minnesota law does not grant the power to "sue and be sued" to municipal police departments or county governmental departments. *See* Minn. Stat. §§ 373.01, subd. 1(a)(1), 373.08 (2022); *see also Campbell v. Hennepin Cnty. Sheriffs*, No. 19-cv-1348, 2020 WL 589547, at *6 (D. Minn. Jan. 21, 2020), *R&R adopted*, 2020 WL 586770 (D. Minn. Feb. 6, 2020) (determining county governmental departments cannot be named in lawsuits); *Ernst v. Hinchliff*, 129 F. Supp. 3d 695, 708 (D. Minn. 2015) (holding municipal police departments are not entities subject to suit). The BPD, HCADC, and the Hennepin County Sheriff's Office are government departments, thus are not entities subject to suit under Minnesota law. Accordingly, the Court recommends that Mays's claims against these Defendants be dismissed.

## II.    Section 1983 Civil Rights Claims

Mays brings claims under 42 U.S.C. § 1983. To state such a claim, "a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

### A.    Applicable Constitutional provisions

Mays brings claims under several Constitutional Amendments and this Court concludes his references to the Fifth, Sixth, Eighth, and Ninth Amendments fail to state a plausible claim. First, Mays alleges no factual allegations regarding any violation of his Sixth or Ninth Amendment rights. Additionally, "though the Ninth Amendment protects some rights not covered by other amendments, it has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights

9

claim." *Carter v. Rysh*, No. 17-cv-1061, 2018 WL 3802082, at *3 (D. Minn. July 13, 2018), *R&R adopted*, 2018 WL 3785169 (D. Minn. Aug. 9, 2018).

Second, the Fifth Amendment's Due Process Clause applies exclusively to federal government action and does not apply to municipal actors. *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019); *see also Truong v. Hassan*, 829 F.3d 627, 631 n.4 (8th Cir. 2016) (citations omitted) ("The due process clause of the Fifth Amendment applies only to the federal government."). Mays does not allege any constitutional violations by the federal government.

Lastly, Mays's allegations place him outside the protections of the Eighth Amendment's ban on cruel and unusual punishment because the ban applies only to convicted criminals serving their sentences. *Jackson*, 944 F.3d at 709. Mays alleges "deliberate indifference" to conditions, evidenced by 13 months of practices and policies "in question" and asserts he has exhausted all administrative remedies because Defendants have "refused to respond to the requests, grievances and kites, or they have been diverted." *Id.* at 12. This language seemingly relates to Mays's current incarceration and not to the events surrounding his 2017 arrest and detention. Mays has not alleged any specific facts relating to conduct against him as a convicted person serving his sentence. To the extent that Mays brings claims based on his current incarceration, the Court finds he has failed to state a claim on which relief may be granted because Mays's operative pleading does not allege any facts related to his current incarceration.

For the reasons discussed, the Court concludes that Mays has failed to state a plausible claim under the Fifth, Sixth, Eighth, and Ninth Amendments and recommends that those claims be dismissed without prejudice.

**B.    *Heck v. Humphrey***

The Bloomington Defendants first assert Counts 1, 3, and 4 should be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994) because, they argue, the claims "attack the validity of Mays's convictions." Bloomington Mem. 12-14. Mays responds that the arrest, search, and seizure leading to this lawsuit did not produce evidence used later in his criminal case. Response 1-3, Dkt. No. 101.

Pursuant to the Supreme Court's decision in *Heck*, "a district court must dismiss a § 1983 claim 'if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,'" unless the plaintiff proves the conviction or sentence has been reversed, expunged, invalidated, or called into question. *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Heck*, 512 U.S. at 487). "Importantly, it is only if the plaintiff's § 1983 claim would necessarily imply the invalidity of his conviction or sentence that the favorable-termination requirement comes into play." *Id.* (quotation omitted).

After reviewing the Complaint and the documents embraced by it, the Court concludes there is nothing in the record before it to indicate evidence seized during Mays's arrest was used later in his criminal case. Mays's Complaint alleges he was released without charges after the incidents giving rise to his claims. He was later charged with, and pleaded guilty to, receipt of child pornography and wire fraud. However, Mays's Complaint does not allege evidence obtained from the arrest, search, or seizure on September 25, 2017, was used in his criminal prosecution, influenced his decision to plead guilty to the charges, or had any connection whatsoever to his eventual convictions and sentence. The Bloomington Defendants do not explain how Mays's § 1983 claims

could invalidate Mays's convictions, stating only that the papers and electronic devices Mays asserts were seized without probable cause "were used as evidence of the crimes to which Mays subsequently pled guilty." Bloomington Mem. 13. Because the Court looks only to Mays's Complaint and the materials embraced by it, this contention is insufficient to establish *Heck* precludes Mays's claims at this stage. It is not apparent from the face of the Complaint nor the accompanying documents that the arrest, searches, and seizures at issue in Counts 1, 3, and 4 led to a conviction or that success on those claims would invalidate Mays's convictions. Nothing in Mays's allegations and the accompanying documents establishes that a judgment in favor of Mays would necessarily imply the invalidity of his conviction or sentence. On the record this Court considers when determining a motion to dismiss, the Court does not recommend dismissal of Counts 1, 3, and 4 under *Heck*.

### C.    Individual capacity claims

Mays brings individual capacity claims against all named Defendants. Compl. 2-5. Such claims "seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (citation omitted).

#### 1.    Personal involvement

Defendants argue claims against Chief of BPD John Doe, Hennepin County Sheriff David Hutchinson, Chief Sheriff of the HCADC John Doe, and County Board Member John Does must be dismissed because Mays failed to allege any specific facts regarding

the personal involvement in any alleged constitutional deprivation. Bloomington Mem. 12; Hennepin Mem. 5-6.

For purposes of personal liability under § 1983, "[i]t is not enough that the defendant is a public official." *Campbell v. Reisch*, 986 F.3d 822, 824 (8th Cir. 2021). Instead, "defendants must be individually involved in the unconstitutional act." *Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 837 (8th Cir. 2021). "[A] plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017). This is true even if the individual whose liability is at issue is a supervisory defendant. *Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018). "While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable . . . if either his direct action or his failure to properly supervise and train the offending employee caused the constitutional violation at issue." *Jackson*, 747 F.3d at 543 (quotation omitted). Thus, Mays must plead specific facts regarding each Defendants' conduct as it relates to the alleged constitutional violation.

Here, Mays has not pleaded a sufficient factual basis to raise plausible inferences that Chief of BPD John Doe, Hennepin County Sheriff David Hutchinson, Chief Sheriff of the HCADC John Doe, and County Board Member John Does were personally involved in or responsible for any unconstitutional conduct. *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (explaining that plaintiffs must plead factual content that allows court to draw reasonable inference that defendant is liable for misconduct alleged). Mays does not allege that these Defendants were involved in or even present for Mays's arrest or confinement. *Mitchell*, 28 F.4th at 895. He also does not allege they failed to train, supervise, or control their subordinates. *See* Compl. 13, 15; *Jackson*, 747 f.3d at 543.

13

Because Mays has not alleged a plausible factual basis for Chief of BPD John Doe, Hennepin County Sheriff David Hutchinson, Chief Sheriff of the HCADC John Doe, and County Board Member John Does to be held individually liable for any constitutional violation, the Court recommends all claims against them be dismissed without prejudice.

The Bloomington Defendants also contend claims against Defendants Larson and Vaughn must be dismissed because Mays failed to include them in his list of Counts. Bloomington Mem. 12. While Mays did not include Larson and Vaughn when listing his claims, he did include them in his list of Defendants and allege facts that they were personally involved in his arrest, the search of his vehicle, and the seizure of his property. Compl. 6. The Court construes Mays's *pro se* Complaint to include Larson and Vaughn as Defendants to Counts 1, 3, and 4, which are analyzed below.

### 2.    Qualified immunity

Defendants argue various claims must be dismissed under the doctrine of qualified immunity. "Qualified immunity attaches when an official's conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *MacKintrush v. Pulaski Cnty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When determining whether defendants are entitled to qualified immunity, the Court considers "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Id.* (quotation omitted).

### i.    Unlawful arrest (Count 1)

Mays brings Count 1 against Potter, Koosmann, Blaine, Vanhall, Mehr, Thul, Harms, Larson, Vaughn, John Doe, and Jane Doe alleging they arrested him without a warrant or probable cause. Compl. 11-12. The Bloomington Defendants do not dispute there was no arrest warrant, however they argue Defendants are entitled to qualified immunity because they had arguable probable cause to make the arrest. Bloomington Mem. 14-16.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause." *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011) (quotation omitted). "Probable cause to make a warrantless arrest exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quotations omitted).

Here, Mays attached to his Complaint a BPD narrative stating that on September 20, 2017, two people reported to the BPD that they were victims of fraud by Mays. Compl. Ex. at 20-21, Dkt. No. 83-1; *Lobrano*, 695 F.3d at 764 (explaining courts may consider public records, materials embraced by complaint, and materials attached to complaint when deciding motion to dismiss). The report alleged Mays had swindled the people out of approximately $700,000 by, *inter alia*, identifying himself as an attorney, telling them incorrect information regarding legal proceedings, and charging them "to keep their son out of prison." *Id.* at 20. The individuals reported that they discovered Mays had lied about his identity after seeing him on the "Judge Judy" television show. *Id.* at 21.

15

Mays's Complaint does not include factual allegations that contradict the report and Mays does not dispute that the BPD and its officers had the reported information when his arrest took place. Instead, Mays alleges Kne stated there was no probable cause to hold Mays and argues this statement establishes that no probable cause existed to arrest or detain him. Response 3-6. Assuming as true Mays's allegation that Kne in fact stated no probable cause existed to hold him, the Court's determination does not depend on Kne's state of mind. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019). Rather, the Court must determine whether the totality of the circumstances at the time of the arrest were sufficient to cause a reasonable person to believe Mays committed a crime, *i.e.* wire fraud.[2] *Ulrich*, 715 F.3d at 1059. This Court need not determine whether "probable cause" existed to arrest and hold Mays because it is apparent there was at least "arguable probable cause" to arrest him. *See* Compl. Ex.; Indictment, Dkt. No. 88-2; *see also Nelson Auto Ctr. v. Multimedia Holdings Corp.*, 951 F.3d 952, 955 (8th Cir. 2020) (stating courts "may consider materials that are part of the public record or do not contradict the complaint, and materials that are necessarily embraced by the pleadings" (quotation omitted)).

Additionally, Mays argues the BPD officers did not have information corroborating the individuals' allegations against him, therefore they did not have probable cause. Response 4-5. Mays did not include this allegation in his Complaint. Regardless, whether BPD had evidence to corroborate the report given to them is irrelevant because officers are not required to have collected enough evidence to justify a conviction for there to be

---

[2] The elements of wire fraud are "(1) intent to defraud, (2) participation in a scheme to defraud, and (3) the use of a wire in furtherance of the fraudulent scheme." *United States v. Garbacz*, 33 F.4th 459, 467 (8th Cir. 2022).

a legitimate finding of probable cause to justify a warrantless arrest. *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013). Even without corroborating evidence, the Court finds that the totality of the circumstances outlined in Mays's Complaint and attached documents provided Defendants with at least "arguable probable cause" to arrest and detain Mays based on the fraud report provided to the BPD. Because Mays's arrest was supported by arguable probable cause, Potter, Koosmann, Blaine, Vanhall, Mehr, Thul, Harms, John Doe, and Jane Doe are entitled to qualified immunity on Count 1. *Borgman*, 646 F.3d at 522-23. Thus, the Court recommends Count 1 be dismissed without prejudice.

### ii.    Warrantless search & seizure (Counts 3 & 4)

Mays brings Count 3 against Kne, Potter, Koosmann, Blaine, Vanhall, Mehr, Thul, Harms, Larson, Vaughn, John Doe, and Jane Doe for searching his vehicle, briefcase, and other things without a warrant or his consent. Compl. 12. Similarly, Count 4 is brought against Kne, Koosmann, Blaine, Vanhall, Mehr, Thul, Harms, the City of Bloomington, John Doe, and Jane Doe for seizing his property, including his vehicle, a laptop, paperwork, USB drives, a briefcase, and a wallet without a warrant or his consent. *Id.* The Bloomington Defendants argue the officers conducted a lawful inventory search of Mays's vehicle and the subsequent search of his vehicle and seizure of property was pursuant to a valid search warrant. Bloomington Mem. 19-21.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A warrantless search or seizure is "per se unreasonable unless it falls within a well-defined exception to the warrant requirement." *United States v. Leon*, 468 U.S. 897, 906 (1984). "Inventory searches are one of the well-defined exceptions to the

warrant requirement." *United States v. Frasher*, 632 F.3d 450, 454 (8th Cir. 2019). After arresting a vehicle's occupant, law enforcement may take protective custody of the vehicle and may conduct an inventory search "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *United States v. Morris*, 915 F.3d 552, 556 (8th Cir. 2019) (quotation omitted). "The search must be reasonable in light of the totality of the circumstances." *Id.* (quotation omitted).

In this case, Mays was arrested at a gas station and law enforcement took protective custody of his vehicle. *Morris*, 915 F.3d at 556. No other responsible person was present to take custody of the vehicle. *See* Compl. 6-7. Law enforcement conducted an inventory search and towed the vehicle. Compl. Ex. at 23. Defendant then obtained a warrant to seize Mays's property. *Id.* at 1-16; *see also* Search Warrant, Dkt. No. 88-6, at 1-10; *Lobrano*, 695 F.3d at 764. The facts Mays alleges are that certain Defendants searched him and his vehicle and seized property from him and his vehicle. Compl. 6-7. Mays has not alleged that the inventory search was unreasonable in light of the totality of the circumstances or that the subsequent warrant was invalid in any way.

This Court will not supply facts not alleged that might support Mays's claim. *Stone*, 364 F.3d at 915. With no specific factual allegations regarding the searches and seizures, Mays's Complaint states a conclusory allegation that the Defendants' conduct was unconstitutional. Without more, this is merely a legal conclusion couched as factual allegation and may be disregarded. *Iqbal*, 556 U.S. at 678-79. Therefore, the Court concludes Mays has failed to allege sufficient facts for unlawful search and seizure claims and recommends Counts 3 and 4 be dismissed without prejudice.

18

### iii.    Excessive force (Counts 14 & 15)

Mays brings Count 14 against Plant, John Doe, and Jane Doe for using excessive force by forcefully handcuffing Mays behind his back. *Id.* He also brings Count 15 against Nybeck, John Doe, and Jane Doe for using excessive force by "violently pushing, slamming, and forcing" Mays into a wall and a vehicle. *Id.*

First, because the Fourteenth Amendment does not apply to excessive force claims involving arrests, the Court considers Mays's claims under a Fourth Amendment analysis. *Jackson*, 944 F.3d at 709. It is also "appropriate to use a Fourth Amendment framework to analyze excessive force claims arising out of incidents occurring shortly after arrest." *Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011) (explaining that the Eighth Circuit has "applied Fourth Amendment excessive force standards to incidents occurring during the transportation, booking, and initial detention of recently arrested persons"). The alleged excessive force here occurred during and shortly after Mays's arrest, while he was being handcuffed and placed in a squad car, while he was transported to HCADC, and while at HCADC. Compl. 6-10. Therefore, Mays's claims of excessive force are governed by the Fourth Amendment. *Chambers*, 641 F.3d at 905.

"The Fourth Amendment guarantees each citizen a right to be free from unreasonable searches or seizures." *Jackson*, 944 F.3d at 710. "Police officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure . . . and reasonable applications of force may well cause pain or minor injuries with some frequency." *Chambers*, 641 F.3d at 907 (citation omitted). It is "established that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (quotation omitted).

Additionally, because "[h]andcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied, [t]o prove that the force applied was excessive in that context . . . a plaintiff must demonstrate something more." *Id.* (quotations and citations omitted). *Jackson*, 944 F.3d at 710. When a plaintiff alleges excessive force by law enforcement, "the conduct should be analyzed under an objective reasonableness standard." *Id.* "Relevant considerations include the severity of the crime at issue, whether the suspect posed an immediate safety threat, and whether he was actively resisting arrest or attempting to flee." *Id.*

The Bloomington Defendants argue Mays's excessive force claim against Nybeck "fails to identify which specific conduct caused the alleged injury or when the injury actually occurred." Bloomington Mem. 28. They also contend the claim against Plant is deficient because "nothing in Mays's fact section actually states Officer Plant caused Mays any pain by handcuffing him." *Id.* Mays responds that he has adequately alleged a claim for excessive force because he stated that even though he complied with all law enforcement orders and was already in handcuffs, the defendants pushed and slammed him into things, and yanked and twisted his arm. Response 13-14. He also asserts that he sufficiently alleged that defendants injured his arm and that they knew of his injury. *Id.* at 14.

Nybeck and Plant are not entitled to qualified immunity if the facts alleged, viewed in the light most favorable to Mays, demonstrate there was a deprivation of a constitutional or statutory right that was clearly established. At the time of Mays's arrest, it was clearly established that an arrestee had a right to be free from the use of excessive force, even if applying force resulted only in *de minimis* injury. *Chambers*, 641 F.3d at 908. Thus, the

Court considers whether Mays has alleged sufficient facts to demonstrate Nybeck and Plant deprived him of his right to be free from excessive force.

Mays alleges that after he told officers he could not lift his arm, Nybeck forcefully shoved Mays into the side of a vehicle, pushed Mays against the squad car, yanked Mays's arm up, pushed Mays harder against the squad car, and applied more pressure to Mays's arm. Mays's complaint asserts that after Mays told Nybeck that he was hurting Mays and that Mays needed medical attention, Nybeck again forcefully pushed Mays into the squad car. Mays alleges he told Nybeck the handcuffs were hurting him, but Nybeck did not loosen them. Mays had been arrested on suspicion of a nonviolent crime and had been complying with the officers during the arrest. Compl. 6. Despite the Bloomington Defendants' contention, Mays does identify the specific conduct by Nybeck that caused injury to his arm, asserts when it happened, and even states that he expressly told Nybeck that his conduct was hurting Mays. Mays also alleges he had red marks on his wrists and could not feel or move his right arm after Nybeck's conduct. Considering the totality of the circumstances alleged, a reasonable jury could find that Nybeck's conduct was objectively unreasonable and in violation of Mays's clearly established right to be free from the use of excessive force.

Mays alleges Plant knew Mays needed medical attention for his arm and still handcuffed Mays in the back, stating policy required it. Plant knew Mays was hurt because Mays told him that he could not feel his right arm and his arm had a burning sensation. Plant also knew Mays had previously had surgery on his injured shoulder and Mays believed it was dislocated from the officers' conduct. Even so, Plant again handcuffed Mays behind his back. Mays had not acted aggressively toward the officers,

had complied with their directives, was arrested for a non-violent crime, and had informed Plant more than once that he was injured and that handcuffing him behind his back was painful. The Court concludes that a reasonable jury, considering the totality of the circumstances, could find that Plant's conduct was objectively unreasonable and in violation of Mays's clearly established right to be free from the use of excessive force. *See Mglei v. Gardner*, 974 F.3d 1151, 1167 (10th Cir. 2020) (stating officer's use of excessive force during handcuffing could give rise to excessive force claim); *Cugini v. City of New York*, 941 F.3d 604, 615-16 (2d Cir. 2019) (same).

Therefore, Mays has alleged sufficient facts to state a plausible claim to relief against Nybeck and Plant for excessive force and the Court recommends the motion to dismiss the claims in Counts 14 and 15 be denied.

### iv.    Failure to intervene (Counts 6, 10, & 11)

Count 6 is against Nybeck, Koosmann, Blaine, Vanhall, Mehr, Thul, John Doe and Jane Doe for failing to intervene and protect Mays when Nybeck "slammed, pushed, and shoved" him into a vehicle. *Id.* Mays also brings Count 10 against Kne, Plant, Nybeck, Koosman, Potter, Harms, Blaine, Vanhall, Mehr, Thul, two John Does, and two Jane Does for failing to prevent use of excessive force by Nybeck. *Id.* at 13-14. Similarly, Count 11 is against Plant, John Does #1-9, and Jane Does #1-7 for failing to prevent use of excessive force by Plant. *Id.* at 14.

"In an excessive force case, a police officer may be liable for breach of a duty to intervene where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." *White*, 865 F.3d at 1081 (quotation omitted).

Mays argues Koosman had "observed and/or had reason to know that excessive force would be or was being used" against him by Nybeck. Response 9. The Hennepin County Defendants argue Mays has not sufficiently pleaded Count 11 because he has also not sufficiently pleaded a claim for excessive force. Hennepin Mem. 9. They also assert Mays has not alleged the Hennepin Defendants had an opportunity to prevent or interrupt any alleged excessive force because Mays was not in their custody when he was handcuffed. *Id.* at 10. The Bloomington Defendants argue that Nybeck and Plant cannot be liable for failing to intervene on their own behavior and that Mays alleges no facts demonstrating the other Bloomington Defendants had an opportunity but failed to intervene in excessive force. Bloomington Mem. 21-23, 27.

The Court has determined Mays sufficiently pleaded claims of excessive force, therefore the question is whether Mays sufficiently alleges facts that Defendants were "aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." *White*, 865 F.3d at 1081 (quotation omitted). This Court concludes Mays has not done so. Mays has not, for example, alleged either Nybeck's or Plant's conduct lasted for more than a brief period of time during discrete instances. Although Mays's allegations assert Koosman was close by during Nybeck's conduct, he has not alleged any facts that could allow a finding of tacit collaboration. Likewise, Mays fails to allege any specific facts regarding the other Defendants, much less that those Defendants had an opportunity to intervene. Thus, the Court recommends Counts 6, 10, and 11 be dismissed without prejudice.

**v.**    **Denial of medical treatment (Count 8 & 13)**

Count 8 is against Kne, Plant, John Does #1-9, Jane Does #1-7, the City of Bloomington, and the City of Minneapolis for denying him medical treatment. *Id.* at 13. Likewise, Count 13 is against Kne, Plant, John Doe, and Jane Doe for denying Mays medical treatment. *Id.*

Because Mays claims these Defendants failed to "provide adequate medical services," the Due Process Clause of the Fourteenth Amendment governs. *Awnings v. Fullerton*, 912 F.3d 1089, 1102 (8th Cir. 2019) (quotation omitted). "Under the Fourteenth Amendment, [a defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quotations omitted). "The standard for evaluating a substantive due process claim is whether the alleged behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.*

The Hennepin Defendants argue Mays does not state a claim for denial of medical treatment because they never had custody of Mays and were not present for or participants in the Bloomington Defendants' decision to release Mays instead of bringing him to the hospital. Hennepin Mem. 8. Similarly, the Bloomington Defendants contend their obligation to provide Mays with medical attention ended when he was released from their custody. Bloomington Mem. 24-25.

Mays argues his injuries were caused by police who knew he needed medical attention. Response 11. But this is insufficient to establish a claim under the Fourteenth Amendment for failure to provide medical attention. Mays has not alleged any facts that could lead to a conclusion that any Defendants' conduct was "so egregious, so

outrageous, that it may fairly be said to shock the contemporary conscience." Here, Mays alleges the Defendants knew he was injured and failed to get him appropriate medical attention. He does not allege, for example, that there were any obvious signs that Mays needed immediate medical attention such as an obvious fracture, dislocation, or bleeding. Mays told Defendants his arm was injured and complained of pain. Mays's injury may require surgery or may heal on its own. But the facts alleged in Mays's Complaint do not "shock the contemporary conscience" and are thus insufficient to state a claim under the Fourteenth Amendment. Therefore, the Court recommends Counts 8 and 13 be dismissed without prejudice.

### vi.    Failure to protect (Count 7)

Mays brings Count 7 against Plant, Kne, John Doe, and Jane Doe for failing to protect Mays by telling Plant to get Mays medical attention and to not drop Mays off in a "high crime" area. *Id.* at 12-13. The Bloomington Defendants argue it is unclear under what theory Mays brings this claim, so the claim should be dismissed. Bloomington Mem. 23. Mays contends Plant owed a duty to Mays to get him medical attention. Response 9-10. He also asserts Plant's actions demonstrate an intent to cause Mays to be assaulted. *Id.* at 11.

As discussed above, Mays has failed to plead sufficient facts to state a claim of failure to provide medical attention. Mays's claim that Defendants failed to protect him by not telling Plant to not drop Mays off in a "high crime" area also does not state a claim. Typically, failure-to-protect cases arise out of an inmate-on-inmate assault by an attacker who was known to be volatile and dangerous or who previously threatened or fought with the victim. *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020). In those cases, a

plaintiff must allege sufficient facts to establish defendant was "deliberately indifferent to the need to protect [the plaintiff] from a substantial risk of serious harm." *Id.* at 975.

Here, Mays was not in a jail or prison setting and was assaulted by individuals who were not under the custody or control of Defendants. Mays has not alleged facts that Defendants knew the area he was dropped off in was "high crime" or even dangerous. None of Mays's allegations allow this Court to find he has adequately alleged any Defendants were deliberately indifferent to the need to protect Mays from substantial risk of serious harm. Thus, the Court recommends that Count 7 be dismissed without prejudice.

### vii.    Failure to train (Counts 9, 12, & 16)

Mays brings Count 9 against Kne, two Jane Does, Jane Doe #4-5, a John Doe, and John Does #6-8 for failing to train officers to provide Mays with medical care. *Id.* Mays also brings Count 12 against Plant, John Does #1-9, Jane Does #1-7, and Hennepin County for failing to train employees to intervene when another agency is using unreasonable force. *Id.* He also brings Count 16 against Hennepin County, the City of Bloomington, Kne, two Jane Does, Jane Does #4-5, John Doe, and John Does #6-8 for failing to train employees on constitutional searches and seizures. *Id.* at 15.

A supervisor may be liable under § 1983 if either the supervisor's direct action or "failure to properly supervise and train the offending employee" caused the constitutional violation at issue. *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (internal quotation marks omitted). A failure-to-train claim requires an underlying substantive claim. *White*, 865 F.3d at 1075.

As discussed above, the Court concludes Mays has failed to state a claim that any Defendant failed to provide him medical care, failed to intervene, or conducted an unconstitutional search and seizure. Because Mays has failed to sufficiently plead an underlying substantive claim, he has likewise failed to sufficiently plead a claim in Counts 9, 12, and 16. Therefore, the Court recommends these claims be dismissed without prejudice.

###### viii.    Denying access to the court (Counts 2 & 5)

Count 2 is against Potter, Koosmann, Blaine, Vanhall, Mehr, Thul, Harms, John Doe, and Jane Doe for holding Mays over 24 hours and refusing to let him call an attorney or the court. *Id.* at 12. Similarly, Count 5 is against Kne, Potter, Rocklin, John Doe and Jane Doe for denying him access to the court and his requests to call his attorney. *Id.*

The Constitution's guaranteed "right of access to the courts is well-established." *Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005). "The right applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied meaningful access by some impediment put up by the defendant." *Id.* The right to access the courts derives both from the First Amendment and from the Due Process Clause. *Id.* at 830-31. To successfully pursue a First Amendment claim, a plaintiff must show that the defendant acted with some intentional motivation to restrict his access to the courts. *Id.* at 830. To successfully pursue a due-process claim, a plaintiff must show that the defendant acted with deliberate indifference to his right to access the courts. *Id.* at 831.

The Bloomington Defendants argue Mays has failed to allege any specific facts regarding how conduct of Kne, Potter, Koosman, Blaine, Vanhall, Mehr, Thul, Harms, and

Rocklin violated his rights. Bloomington Mem. 18. They also assert Mays was released within 36 hours of his arrest and without being charged, thus he had no right to counsel which could be violated. *Id.* at 17-18. They also contend Mays has failed to allege how calling his attorney would have changed his circumstances. *Id.* Mays asserts that had he been allowed to call a court or an attorney, he could have obtained a probable cause determination and medical attention. Response 6-7.

Accepting as true all Mays's factual allegations and drawing all reasonable inferences in Mays's favor, the Court finds no allegation indicating any Defendants intentionally conspired to keep Mays from accessing the court or his attorney. Mays has not alleged the Defendants had some intentional motivation to restrict his access to the courts. *Scheeler*, 402 F.3d at 830. In fact, Mays alleges that when he asked Kne to allow him to call his attorney, she said she would have the attorney's card brought to him. Even though Mays was not then provided an opportunity to call his attorney, his allegations are not sufficient to establish the Defendants intentionally conspired to prevent him from doing so. Therefore, the Court recommends that Counts 2 and 5 be dismissed without prejudice.

### D.    Official capacity claims

Mays asserts all claims against Defendants in their individual and official capacities. "A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself." *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007). Accordingly, the Court construes Mays's claims against the Hennepin Defendants to be against Hennepin County and the City of Minneapolis, and the claims against the Bloomington Defendants to be against the City of Bloomington. These Defendants argue Mays's official-capacity claims must be dismissed because he does

not allege facts regarding policies or customs. Bloomington Mem. 11-12; Hennepin Mem. 6-8.

"[A] municipality can be liable under § 1983 if an 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (quoting *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978)). "A governmental entity cannot be held vicariously liable for its agent's acts under § 1983." *Brockinton*, 503 F.3d at 674. "[I]n order for municipal liability to attach, individual liability must first be found on an underlying substantive claim." *Id.* (quotation omitted).

Here, this Court has determined Mays failed to state a claim under § 1983 in all but his excessive force allegations. It necessarily follows that Mays has failed to state a *Monell* claim against the Hennepin County and the City of Minneapolis. *Brockinton*, 503 F.3d at 674; *see also Mallak v. Aitkin Cnty.*, 9 F. Supp. 3d 1046, 1063 (D. Minn. 2014) ("Because Plaintiff has not established an underlying violation of any constitutional right, any *Monell* claim against the City and County Defendants must be dismissed." (citation omitted)); *Bass v. Anoka Cnty.*, 998 F. Supp. 2d 813, 824 (D. Minn. 2014) ("As already explained, all constitutional claims against the individual defendants fail. As a result, dismissal of the municipal liability claims against the City Defendants is warranted."). Thus, the Court recommends that all claims against Hennepin County and the City of Minneapolis be dismissed without prejudice.

Because Mays has sufficiently stated a claim of excessive force against Nybeck and Plant, both officers employed by the BPD, the Court will consider whether Mays has stated a *Monell* claim against the City of Bloomington. To do so, "a plaintiff must identify

29

a governmental policy or custom that caused the plaintiff's injury." *Brockinton*, 503 F.3d at 674 (quotation omitted); *see Thomsen v. Ross*, 368 F. Supp. 2d 961, 969 (D. Minn. 2005) ("A Section 1983 plaintiff must first identify the government policy in question.").

Mays does not allege Nybeck's conduct was pursuant to any policy or custom. The only policy Mays references in his Complaint is the policy Plant referred to when refusing to handcuff Mays in the front. Mays does not argue that policy was unconstitutional, he only argues that considering the circumstances, Plant should have violated the policy and handcuffed Mays in the front. This is insufficient.

Additionally, a single violation of a policy does not plausibly allege a custom, let alone a custom causing constitutional injury. *See Ulrich*, 715 F.3d at 1061 (isolated incident of alleged police misconduct cannot establish a municipal policy or custom creating liability under § 1983); *Russell v. Hennepin Cnty.*, 420 F.3d 841, 849 (8th Cir. 2005) ("At most, the record shows a single deviation from an official policy . . . [A] single instance of failing to follow official policy is insufficient to establish a custom of violating the policy.")). Here, Mays alleges Nybeck and Plant each, and independent of one another, used excessive force. This is insufficient to establish an unofficial custom of excessive force. To the extent Mays alleges the existence of a policy or custom at all, the policy or custom itself is not sufficiently plausibly alleged, nor is its unconstitutional nature or results.

A plaintiff that "allege[s] no facts in his complaint that would demonstrate the existence of a policy or custom by [the municipality] that caused [the alleged] deprivation" fails to state a *Monell* claim. *Ulrich*, 715 F.3d at 1061. Thus, the Court concludes that Mays has offered nothing more than a conclusory allegation as to the existence of a policy

or custom, and thus has failed to state a *Monell* claim against the City of Bloomington. *See Iqbal*, 556 U.S. at 678. For these reasons, the Court recommends that the official capacity claims against Defendants be dismissed without prejudice.

       **E.**    **John & Jane Does**

       **T**o the extent that Mays has listed a John or Jane Doe who has not been included in the above analysis, the Court finds Mays has failed to allege facts sufficient to state a claim against that defendant in an individual and official capacity. Thus, the Court recommends that claims against such John and Jane Does be dismissed without prejudice.

**III.**    **Section 1985 Conspiracy Claims**

       Mays also brings conspiracy claims under 42 U.S.C. § 1985. A plaintiff must adequately show an underlying constitutional violation to pursue a civil conspiracy claim. *Novotny v. Tripp Cnty., S.D.*, 664 F.3d 1173, 1180 (8th Cir. 2011). Because Mays has only sufficiently pleaded an underlying constitutional violation in Counts 14 and 15, his civil conspiracy claims in all other Counts must fail. *Id.*

       To establish a conspiracy under § 1985, a plaintiff must prove: 1) the existence of a conspiracy; 2) a purpose in the conspiracy to deprive him of his civil rights; 3) an act in furtherance of the conspiracy; and 4) injury. *R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist. No. 2149,* 894 F. Supp. 2d 1128, 1144 (D. Minn. 2012). The purpose element requires a showing of some "class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 1145 (citations and quotations omitted). Mays offered nothing more than a general suggestion that a conspiracy existed among the Defendants. He presented no particulars on how any of the Defendants conspired with Nybeck and Plant

to violate his civil rights. Nor did Mays allege facts to satisfy the purpose element for a conspiracy. Thus, the Court recommends that Mays's civil conspiracy claims be dismissed without prejudice.

## IV.    Miscellaneous

In addition to his civil rights claims, Mays alleges state negligence claims against every Defendant in every count. Compl. 10-12. This Court has original jurisdiction over the instant action under 28 U.S.C. § 1343(a) based on the § 1983 and § 1985 claims. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Here, however, Mays fails to specifically allege that any Defendant acted negligently. Therefore, the Court recommends that the negligence claims be dismissed without prejudice.

Mays also seeks relief on behalf of "all others similarly situated who are, have been during the past year, or will be, confined in the jail" and asks this Court to appoint counsel for the class and to appoint a Special Master. Compl. 1, 6, 12. The Court recommends that Mays request to certify a class, to appoint counsel for a class, and to appoint a Special Master be denied.

## CONCLUSION

The Court has carefully considered the face of Mays's Complaint, accepted as true all factual allegations, and drawn all reasonable inferences in Mays's favor. Based on its judicial experience and common sense, the Court concludes Mays has alleged sufficient facts that state a plausible claim to relief for only two claims: (1) the Fourth Amendment

excessive force claim against Plant in Count 14, and (2) the Fourth Amendment excessive force claim against Nybeck in Count 15. This Court recommends that Mays be allowed to pursue those claims and that all other claims be dismissed without prejudice.

### RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1)      The Hennepin Defendants' Motion to Dismiss [Dkt. No. 90] be **GRANTED**;

2)      The Bloomington Defendants' Motion to Dismiss [Dkt. No. 84] be **GRANTED IN PART and DENIED IN PART** as follows:

   a)      The motion be denied with respect to Counts 14 and 15; and

   b)      Counts 1-13 and 16 be dismissed without prejudice.

Dated: August 11, 2022                          _____s/David T. Schultz_____
                                                DAVID T. SCHULTZ
                                                United States Magistrate Judge

### NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).